The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Bernard Lindsey, appeal number 19-2169. Attorney Brooks, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. Benjamin Brooks on behalf of Bernard Lindsey. And if I could ask for one minute of rebuttal time in advance, please. Yes, you may. Thank you, Your Honors. So, I wanted to focus today on the deficiencies in the search warrant and also on the admission of the text messages that were constituted improper prior bad act evidence. With respect to the search warrant, as you know, of course, a search requires more than just probable cause that a crime had been committed, but there must also be probable cause that enumerated evidence of the offense will be found in the place to be searched, which is what we call the nexus element. So, with respect to the nexus to the phones, the trial judge took the position that it would be obvious that a cell phone recovered in the home of somebody who had appeared to be actively engaged in drug dealing would contain evidence of drug dealing. But I think the nexus requirements are stricter than that, and the judge's analysis failed to account for the vast privacy interests that are implicated by a search of a modern cell phone. So, when you consider Riley v. California, together with the nexus law, and most particularly United States v. Roman, I think it becomes clear that the judge made the improper ruling with respect to the nexus. Now, on that particular issue, I would suggest I think there's a serious waiver issue here, which I would like you to address. As I read the transcript of the suppression hearing, I really don't see anything in the discussion between trial counsel and the judge that even begins to resemble the kind of particularity argument that is made appeal. There are a couple of references to over-breath in that hearing, but that clearly seems to be a reference to the mistaken attachment of the child pornography material to the affidavit, and the judge's concern that there may be charges being brought by the government that have nothing to do with drug trafficking. So, other than that, those references to this suggest the kind of particularity argument that you're making on appeal, which I think does raise a serious waiver issue. So, I would like you to respond to that. Okay. So, with respect to the particularity argument, I think that the defense counsel's memorandum that was submitted in support of the motion to suppress in the court below, it does, first of all, reference the entire relevant portion of the Fourth Amendment. In other words, not just the commission element, but also the particularity requirement, and that's at RA 24. The motion that he filed also makes a specific complaint that the affiant didn't describe, and now I will quote, he says, Wormsley, the affiant did not describe how or why drug dealers use cell phones, nor did he describe what evidence he expected to find in the phones which would pertain to the distribution of controlled substances, and that's at RA number 16. And then, at the oral argument, he again notes to the judge that, and now I will quote again, part of the issue is in the attachment that describes the evidence that they're looking for. It clearly was a mistake. It's entirely devoted to searching cell phones for evidence of child description as opposed to in a drug case where they're describing the procedures that they would be using, and that's the end quote, and then the judge goes on from there and says, well, maybe it's overbroad, but here are the reasons that I don't think that that matters in this situation, and then the argument moved on. So I think that even though it is true that he didn't separate his argument into one section that dealt with nexus and a separate section that dealt specifically with the particularity clause, he raised the facts in front of the judge, and he raised the issues in front of the judge, and the judge considered them. So for that reason, I don't think the issue has been waived. So do we know from the record, was this a cell phone or a smartphone? I think it's described as a smartphone, and we know that it had photographs and video on it, so I think that that is clear that it's a smartphone, but whether or not that evidence was put in front of the magistrate, I think they were described as two LG. I would have to go check to see if they said two LG smartphones or two LG, and then they just listed the type of phone that was. And do we know where on the phone the search was that you think a search shouldn't have been? Someone found dealing drugs with two smartphones next to them. I'm sorry, can you say that again? Yes, where did they search that you think they shouldn't have searched? Well, I think there was no limitation on where they could search at all, so presumably... That wasn't the question, counsel. Would you answer the question? So while they searched an area, they appeared to search the entire phone, right? So I would say that the areas that they searched that they couldn't have searched would include the photographs, but I would say that when there is a case where the officer searches beyond what the warrant allows for, then there is case law that says, you know, we can just... Didn't the warrant allow for searches of photographs, and isn't it pretty obvious that photographs might very well contain evidence of drug dealing? Well, I think that the warrant did allow for a search of the photographs, and I think that's just the problem, because the warrant and the application for the warrant didn't describe why it would be that you could expect to find evidence that pertained to drug dealing in, say, the photographs or really anywhere that they were searching for, and I think what's important about Riley is that it says very specifically, look, a modern cell phone contains so much information in it that it actually exposes the government to more than a search of a home. So the part... Picking up on Judge Kayada's point, doesn't a modern cell phone have many more features and apps on it than a smartphone? I think that, in my mind, a modern cell phone and a smartphone are the same thing. Doesn't Riley... I wonder if Riley actually cuts against you, because Riley, we know that you could get a warrant... In these circumstances, you could get a warrant to search the home for drug paraphernalia, photos, drug records, and the like. Riley seems to make clear that a phone is even more likely than the home to have lots of stuff on it. So I think that increases the privacy interest, which is why we require a warrant. But when you then come to Nexus, it seems to cut against you. Right. So the idea is that because a modern cell phone or smartphone contains so much information, you can infer that, of course, it's going to have something that would be incriminating in there somewhere. But I think when you look at the Nexus law, and this is why I think United States versus Roman is important, if a cell phone has more things on it that raise privacy issues than a home, then the Nexus requirement has to be at least as protective of a search of the cell phone as it is of the home. And the cases around searching a home have said, you can't just make that assumption that because somebody is a drug dealer, they're going to hide evidence in their phone, even though there's some surface appeal to that. Of course, somebody who's heavily involved in the drug trade is probably going to leave some evidence of their dealing at home. Suppose he had a large file cabinet. Couldn't you get a warrant that would allow you to search the file cabinet for records of drug transactions? You probably could. But you'd open every drawer and you'd look at the folder headings and you'd see what you find. How's that different than saying you can search your cell phone for records of drug dealing? Well, I think what Roman would say is that if you wanted to go and find the filing cabinet and look through it, you would have to have some evidence, something that was more than just an assumption that he was hiding some evidence of all. Factually, it was a very, very different case. Judge Kayada and I were on that case with Judge Stahl, the authoring judge. There, all of the evidence pointed to the drugs actually and paraphernalia and dealing being located someplace else. That is not the situation here. In fact, the police had information that drug dealing was going on from this location, which was his home. Right, but I think what's important to me about Roman is it says, just because somebody lives somewhere doesn't mean you're going to find evidence of their on. You want to sum up and then you have your minute of rebuttal. Did you want to say something about your argument it was an abuse of discretion to allow the text messages? Yes, please. Thank you, Your Honor. I think that the real problem with the introduction of the those prior text messages, and now we're talking about the ones that are from March and February, not the ones that were specifically related to Bryce in London, how those showed anything or were relevant in any way other than the fact that they showed that he had a propensity to deal drugs. It really becomes very clear how that plays out in this trial when you had a situation where there was at least some, there was evidence that perhaps Bryce in London possessed these drugs. There was some evidence that perhaps Mr. Lindsay... Okay, counsel, we have the point. Thank you. Excuse me. Counsel, I have an additional question on the waiver issue. It seems clear that in order to decide this particularity issue, we need to have a, I would suggest, a much better understanding than this record would give us of the way in which information is stored on a smartphone, the ways in which access can, how one can get access to that in a very specific way without roaming generally through the phone. The problem with the way that this case was developed below is we have nothing in the record, nothing in the record that allows us to understand those very technical issues. We have some representations in your reply brief that there are search words that can be used to try to get that information in a circumscribed way. But again, because this particularity issue, as you articulated, was not the focus of the proceedings below, we just don't have the information that would allow us to make the kind of informed judgments we have to make. I don't know how you can say that the inattention to the details of this particularity argument don't really create a waiver issue. I mean, how do you get around that problem? Well, I still think that the facts that the trial attorney put in front of the judge were enough to raise the issue that clearly this warrant was overbroad. Clearly this warrant had described information that could be taken from the cell phone that had nothing to do with the case at hand. Remember they made a mistake. I'm sorry, counsel. Let's leave out the child pornography issue. Focus your answer to Judge Lopez merely on evidence of drug dealing. Right. So it's the government's burden to show that the warrant was sufficiently particular. And I think that on these facts, the trial attorney made a representation that these facts were overbroad. The judge rejected that, but I don't think that's enough to find a waiver. Thank you. Thank you. Attorney Brooks, at this time, you can mute your audio and your video. And Attorney Aframe, please introduce yourself for the record. Good morning. Seth Aframe representing the United States. I'd like to begin with the Fourth Amendment argument. As I understand it, there are two separate arguments that are made on appeal. The first is the nexus argument, which is to say that there was no insufficient evidence put forward that these particular phones were used in the defendant's drug dealing activities. And the second argument is a particularity argument, which is to say that the warrant did not identify where on the phone they would specifically look for evidence of drug dealing. So my view is the nexus argument was raised and fully litigated below, and the particularity argument was not. As to the nexus argument, I focused this court's attention on its recent decision in Adams, which was another case where a bunch of cell phones were found in a car, and there was no specific evidence available to the officers that those phones had been used in the drug dealing. But all of the defendant's prior record, the plastic bag ties in the car that the dog alerted on the car. And so the court said, and a statement by the affiant that cell phones are associated with drug dealing. And this court held in those circumstances, there was probable cause to search those phones. Well, here we have a situation where the phones were found in the apartment where the drugs were located, drug preparation, paraphernalia was present, and cell phones. And so for the same reasons, I think it's fair to say, and also an affiant statement about the connection of drugs in cell phones, that under the probable cause standard, that is enough to look in the phones for drug dealing, which is what distinguishes it from this Roman line of cases, which merely hold that if all you know is someone's a drug dealer, and they live somewhere, you can't search their house. You need something else. But here we have the something else. The phones are there, commingled with the rest of the drug dealing business equipment. And so in my view, that is sufficient to establish nexus under this court's recent precedent. The particular area... Mr. Alfred, this question occurs to me in the aftermath of Judge Lopez's comment that the record just here was not made as to whether there was any possible way of narrowing the officers looking at the cell phone to find data. I recently wrote an opinion in a case concerning border searches, which drew a distinction between what the agents could look at on whatever was visible on the by hooking it up to a different device, which then had far greater search capabilities. Now, I know the record does not tell us this, but I have been wondering about the argument in the that would have involved somehow hooking up these cell phones to external reading devices. So the usual way this occurs is the phone is connected to a cell bright, a dump of the what's called a dump of the phone is made, and it is reviewed. So in this circumstance, what's difficult, I think, and I think what Judge Easterbrook was talking about in the Seventh Circuit is how do you know where on the phone you're going to look? Because I think as you were suggesting when you were talking to my colleague, the question is pictures, right? You can't type in drugs. That's not necessarily going to bring up a picture. But as we know, many times defendants take pictures of themselves with the drugs. It's very powerful evidence. Whose phone is it? Pictures tell us. So there are places in the phone that just word searches won't work. I think it's significant here. So let me talk about Riley and distinguish it in two ways. One, Riley is about privacy concerns with phones. But the problem in Riley was a search incident to arrest in the government's position was, well, we took an incident to arrest. We don't really know what's on it, but we can just rummage through it. And the Supreme Court said, no, you can't. There are privacy concerns here. We want you to get a warrant because we want you to prove to a judge that there's a good reason to look at this phone. And that's what happened here. We did prove to a judge there's a good reason to look at this phone. And then the question is, well, where can you look? And it's a very hard question to answer ex-ante, to know ahead of time. Excuse me. As you answer the question, I mean, there is something troubling about the government's rationale. Your position seems to be, well, we don't know where we might find it in the cell phone. So we should be able to just roam throughout the cell phone until we find something that is incriminating. I mean, that as articulated in that way, and that is what the brief says, articulated in that way, that does sound like, if you think of the cell phone as a place, and I think Riley suggested we should think of it as a place, you're saying we can just roam through it until we find something that we think is incriminating. That can't be right. I guess that if you're going out, if you're using the phone, and there's no evidence that that happened here, to access third-party places. But when we say we can search your house for drugs and drug paraphernalia, and drug, I mean, we let you search the house, and we let you look everywhere in the house. And so here's the phone, and the evidence here is we looked at text messages and pictures. That's where the evidence came from, at least. Those are places you would look. Now, I do agree with you, Judge Lopez, this is potentially an emerging area that's totally not raised in this case, and I agree with you, but I agree with you, there's an emerging question that I don't think Riley answers, but I think what Riley's concern was is you can use the cell phone as a platform to get to other places off the phone. But the phone itself, to me, still seems like either the house, or the file cabinet, or the places where you keep information. There's no way the government can say, well, did you keep it in the notes section of your phone? Did you keep it in the pictures? Did you keep it in the text messages? You could keep your drug ledger in any of those places. Even in the house, you have to particular on what you are looking for within the house. You just can't say, we want to go in the house and look everywhere for everything. There is a... It has to be related to drug activity. That's right. You can't say, I'm here on a drug warrant, and I'm looking for bank fraud evidence. No, you cannot do that. I don't think we did that here, because I think this warrant was limited to drug evidence. I think the hard question is, if you're limited to drug evidence, how do you know where on the phone the drug evidence will be before you've looked at the phone? That's a problem. That is a problem. I think that it is like the house in that way. You can look in any logical place where that evidence would be. If we declared there was a particular place, like the notes function or something that you couldn't look, then we'd know in the future where you'd always find the drug evidence. Correct. It is a technological problem that we face. I do think that Seventh Circuit case that I cited in the brief talks about it as a problem. They called it the Needle in the Haystack problem. Well, Judge Easterbrook's opinion is actually quite persuasive, but we do have a problem here in that the attachment referred to child pornography. Incredibly sloppy. We've seen this before from New Hampshire. In fact, we've seen it from, I believe, a federal warrant in New Hampshire. How does that play out in this case? You have seen it from a federal warrant in New Hampshire. I can say in this case, it was not a federal warrant in New Hampshire, so it did not involve the U.S. Attorney's Office. In any event, what I understand to have happened there was that child pornography attachment talks about procedures that are going to be used to look at the phone. I'm not defending that as a good practice. Every document, I believe, should be particularized to that warrant. That was a identified as the drug trafficking crime. That's true. So I think that's a mistake. I can't defend that part of it, but I don't think it has legal significance to the answer in this case. Thank you, Your Honor. Would you like me to speak on the 404B evidence, only if the court wants me to? No. I have no questions. Okay. Thank you. Thank you, Attorney Aframe. At this time, if you could mute your audio and video, and Attorney Brooks, if you could reintroduce yourself on the record and then proceed. Benjamin Brooks, Your Honors, on behalf of Mr. Bernard Lindsey. I just wanted to point out a couple of things. The government says that we looked in, for instance, the photos because sometimes we know that defendants take pictures of themselves with drugs. Well, that's exactly the kind of information that could have been included in the affidavit of the warrant to describe and explain why they were looking in various places in the cell phone. It wasn't. I think the point here is that when you look at the affidavit as a whole, it really doesn't give any reason for searching the phone, the full phone, or any description of what it was looking for, except for this assumption that, of course, you would find some evidence of drug dealing. I think what the NAXIS requirement says is there has to be something more than that. You can't just rely on those kind of assumptions. In this case, had there been evidence that Mr. Lindsey was seen on his cell phone when he was doing these drug transactions, then you could say, okay, there it is. If a confidential informant had dialed a number to make a drug transaction with him, then you could say, okay, there it is. It was totally absent in this case. I think for that reason, the NAXIS is missing. Time has expired. Thank you, Mr. Brooks. Thank you, Your Honors. That concludes argument in this case. Attorney Brooks and Attorney Aframe, you should disconnect from the hearing at this time.